# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY PETERSON, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and DOES 1-100,<br><br>　　　　　　　　　　Defendants. | Case No.: 25-cv-01916-H-SBC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. No. 6.] |

On December 2, 2025, Defendant United States of America ("the United States") filed a motion to dismiss Plaintiffs Ashley Peterson, Mark Peterson, II, and C.P.'s complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. (Doc. No. 6.) On December 29, 2025, Plaintiffs filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 9.) On January 5, 2026, the United States filed its reply. (Doc. No. 12.) On January 5, 2026, the Court took the matter under submission. (Doc. No. 11.) For the reasons below, the Court grants the United States's motion to dismiss.

///

///

## Background

The following factual background is taken from the allegations in Plaintiffs' complaint and the United States's Request for Judicial Notice.

On July 29, 2023, three individuals rented two privately owned, personal watercrafts for use in Mission Bay in San Diego, California. (Doc. No. 1, Compl. ¶¶ 27-29.) At approximately 1:52 p.m., one of the personal watercrafts struck and killed S.P. (the "Decedent"), a twelve-year-old child who was on a stand-up paddle board near De Anza Cove in Mission Bay. (Id. ¶¶ 40, 48, 49.) The operator of the personal watercraft that struck S.P. was arrested, charged, and ultimately pled guilty to vehicular manslaughter with gross negligence. (Doc. No. 5-4, Ex. D; Doc. No. 10 at 6.)

On June 17, 2024, Plaintiffs filed a personal injury and wrongful death suit in Superior Court of California, County of San Diego, against the City of San Diego, the County of San Diego, the State of California, various employees of those public entities, the operators of the personal watercrafts, the owners and lessors of the personal watercrafts, and the website through which the rental was arranged. (Doc. No. 6 at 11.)

On July 28, 2025, Plaintiffs filed a complaint against the United States and Does 1-100. (Doc. No. 1, Compl.) Plaintiff Ashley Peterson is S.P.'s surviving natural mother and the appointed administrator of the estate of S.P. (Id. ¶¶ 3, 4.) Plaintiff Mark Peterson, II is S.P.'s surviving natural father, and Plaintiff C.P. is S.P.'s surviving natural brother. (Id. ¶¶ 5, 6.) Plaintiffs all reside in the County of San Diego. (Id. ¶¶ 3-6.)

Plaintiffs claim that the United States, through the United States Army Corps of Engineers and the United States Coast Guard, maintains, operates, controls, monitors, patrols, oversees, regulates, or administers the waters and marinas of Mission Bay, San Diego in conjunction with the City of San Diego and the State of California. (Id. ¶¶ 8, 22.) Plaintiffs also assert that the United States is responsible for placing and maintaining "aids of navigation" throughout Mission Bay, pursuant to an agreement with the State of California and the City of San Diego. (Id. ¶¶ 8, 25, 26.)

Plaintiffs' complaint alleges claims for: (1) negligence and other wrongful conduct under the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq.*; (2) negligence and other wrongful conduct under the Public Vessels Act, 46 U.S.C. § 31101 *et seq.*; and, in the alternative, (3) negligence and other wrongful conduct under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) *et seq.* (Id. ¶¶ 58-80.) In particular, Plaintiffs allege the United States failed to demarcate or separate hazardous areas, adequately regulate or prevent dangerous and unauthorized personal watercraft rentals, provide appropriate warnings or signage, patrol or enforce safety hazards in Mission Bay, and issue adequate guidance, training, or materials for rental activity in Mission Bay. (Id. ¶¶ 44-47.)

By the present motion, the United States moves to dismiss Plaintiffs' Suits in Admiralty claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Plaintiffs' Public Vessel Act and Federal Tort Claims Act claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. (Doc. No. 6 at 8, 13-24.)

## Discussion

### I.  Legal Standards

#### A.  Fed. R. Civ. P. 12(b)(1) Standard for Lack of Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction. United States v. Mark, 530 F.3d 799, 810 (9th Cir. 2008). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). Subject matter jurisdiction cannot be waived and when a district court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. Assoc. of Am. Med. Colls. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts "that the allegations contained in a complaint are insufficient on their face to invoke federal

jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. In resolving a factual challenge, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id.

Where, as here, a Rule 12(b)(1) motion is brought alongside a Rule 12(b)(6) motion, it is appropriate for the court to first consider and address the disputed jurisdictional issues before analyzing the merits of the claims. See Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits." (citation omitted)).

B.     Fed. R. Civ. P. 12(b)(6) Standard for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.  Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'"  Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).  But a court need not accept "legal conclusions" as true.  Iqbal, 556 U.S. at 678.  "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

A court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).  Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

**II.    Analysis**

The United States moves to dismiss Plaintiffs' Public Vessel Act ("PVA") and Federal Tort Claims Act ("FTCA") claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and Plaintiffs' Suits in Admiralty ("SAA") claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 6 at 8, 13-24.)  The Court will address each claim in the order set out by the United States.

/ / /

A.     Defendant's Rule 12(b)(1) Motion to Dismiss

The United States' motion to dismiss makes a facial jurisdictional attack on Plaintiffs' PVA and FTCA claims. (Doc. No. 6 at 13-14.) The United States asserts that neither statute provides an applicable waiver of sovereign immunity to invoke federal jurisdiction. (Id.)

The concept of sovereign immunity is the idea that the United States cannot be sued unless it has specifically consented. Daniels v. United States, No.: 3-16-cv-02077-BTM-DHB, 2017 WL 3478765, *2 (S.D. Cal Aug. 11, 2017) (citing Price v. United States, 174 U.S. 373, 375-76 (1899)). The presence of such consent is a "prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983); see also United States v. Sherwood, 312 U.S. 584, 586 (1941). For the United States to consent to suit, a waiver of sovereign immunity must be unequivocally expressed by Congress and any conditions Congress attaches to a waiver of sovereign immunity "must be strictly observed, and exceptions thereto are not to be lightly implied." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

    i.     Plaintiffs' Public Vessel Act ("PVA") Claim

Plaintiffs contend that this Court has jurisdiction pursuant to the PVA, 46 U.S.C. § 31101 et seq. (Doc. No. 1, Compl. 67.) Plaintiffs argue that "[t]o the extent the public vessels of the United States . . . were involved in the creation or exacerbation of the dangerous condition alleged herein, this cause of action is brought under the Public Vessels Act, 46 U.S.C. § 31101 et seq." (Id.)

Under the PVA, the United States' sovereign immunity is waived in "civil actions in personam in admiralty against the United States for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). The Ninth Circuit has interpreted the phrase "damages caused by a public vessel" broadly "to encompass all tort and contract claims 'arising out of the possession or operation of the ship.'" Tobar v. United States, 639 F.3d 1191, 1198 (9th Cir. 2011) (quoting Thomason v. United States, 184 F.2d 105, 107 (9th Cir. 1950)).

Here, the invocation of the PVA as an alleged basis for jurisdiction is inappropriate under the facts alleged. The complaint does not identify any public vessels owned or operated by the United States that caused damage or created or exacerbated the dangerous conditions alleged. (<u>See generally</u> Doc. No. 1, Compl.) Rather, the complaint only identifies two privately owned vessels, a 2022 Yamaha EX Deluxe WaveRunner and a Goplus 10 ft white and blue inflatable standup paddle board, as the vessels that caused the damage at issue. (Doc. No. 1, Compl. ¶¶ 28, 37.) Further, the complaint does not allege that any person or persons acting on behalf of or in the name of the United States ever took possession of the identified vessels. As such, Plaintiffs have failed to allege that any public vessels of the United States within the meaning of the PVA were involved in the incident such that a waiver of sovereign immunity would be applicable. Therefore, the PVA does not provide a proper basis for federal jurisdiction, and the Plaintiffs' PVA claim must be dismissed for lack of jurisdiction with prejudice.

        ii.    <u>Plaintiffs' Federal Tort Claims Act ("FTCA") Claim</u>

In the alternative, Plaintiffs contend that this Court has jurisdiction pursuant to the FTCA, 28 U.S.C. § 1346(b). (Doc. No. 1, Compl. ¶ 74.) Plaintiffs assert that the United States had a "duty to exercise reasonable care in the operation and oversight of navigable waterways under its control or shared management," and the United States "breached these duties by, among other things, failing to regulate unauthorized and unsafe PWC [personal watercraft] rental activity . . . ." (<u>Id.</u> ¶¶ 76-77.)

The FTCA waives the United States' sovereign immunity for certain torts committed by federal employees. 28 U.S.C. § 1346. The FTCA does not apply to "[a]ny claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d); <u>see also</u> <u>Smith v. United States</u>, 507 U.S. 197 (1993). As such, jurisdiction under the FTCA and the admiralty statutes is mutually exclusive. 28 U.S.C. § 2680(d).

Here, Plaintiffs allege facts for an incident that unequivocally occurred upon navigable waters. (Doc. No. 1, Compl. ¶¶ 36-43.) A collision between watercrafts on

7

navigable waters falls under admiralty jurisdiction. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996). Further, the Complaint does not allege any land-based misconduct by the United States. Because the facts of the present action fall within the Court's admiralty jurisdiction, the waiver of sovereign immunity must come from the SAA or the PVA. 28 U.S.C. § 2680(d); see also Harrington v. U.S., 748 F.Supp. 919 (D.P.R. 1990).

As neither the PVA nor the FTCA contain a proper waiver of sovereign immunity, the two causes of action do not supply grounds for this Court to exercise jurisdiction. As such, the two causes of action brought pursuant to the PVA and FTCA must be dismissed.

### B.   Defendant's Rule 12(b)(6) Motion to Dismiss

Having dismissed Plaintiffs' PVA and FTCA claims for lack of jurisdiction, the Court must now consider whether the Plaintiffs' SAA claim for negligence should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The United States does not dispute that the Court has admiralty jurisdiction over Plaintiffs' SAA claim.

#### i.   Request for Judicial Notice

As an initial matter, the United States filed a request for judicial notice of certain documents and facts. (Doc. No. 5.) Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). Proper subjects of judicial notice may include information on government websites, legislative documents, matters of public record, and publicly accessible websites. See Fed. R. Evid. 201; see also, Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities.").

In deciding a motion to dismiss under Rule 12(b)(6), a court is generally limited to the four corners of the complaint. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.

2003). However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." Id.; see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"). A court may also "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

The United States requests the Court take judicial notice of seven documents containing information derived from official government agency websites and matters of public record. (Doc. No. 5.) On December 29, 2025, Plaintiffs filed an objection to the United States' request as to all exhibits. (Doc. No. 10.) Plaintiffs do not generally oppose judicial notice of the existence of certain public statutes, municipal codes, and other government documents. (Doc. No. 10 at 2.) Rather, Plaintiffs object to the extent that the United States seeks to "improperly rely on noticed materials…to attempt to establish facts which are disputed and which will be the subject of discovery…" or "establish[] lack of duty". (Id. at 2, 6.) On January 5, 2026, the United States filed its reply. (Doc. No. 13.)

The United States' request for judicial notice is granted as to the following documents:

(1) In 1945, the Legislature of the State of California granted to the City of San Diego all right and title to Mission Bay located in San Diego. (Doc. No. 5-1, Ex. A.) The document is a publicly available legislative document whose accuracy cannot reasonably be questioned.

(2) The City of San Diego Municipal Code, Chapter 6, Article 3, (the "Code") governs the recreational use of Mission Bay. (Doc. No. 5-2, Ex. B.) The Court will take judicial notice of §§ 63.20, 63.20.1-3, 63.20.6, 63.25.2, and 63.25.4 of the Code. The document is publicly available and derived from an official government agency website. Its accuracy cannot reasonably be questioned.

  (3) The Coast Guard Light List for 2023 includes five aids to navigation for Mission Bay, none of which are in the interior waters of Mission Bay. (Doc. No. 5-5, Ex. E.) The document is an official publication of the Coast Guard and is publicly available. Its accuracy cannot reasonably be questioned.

The Court notes that Plaintiffs cite to Cal. Const., Art. X; § 3, Cal. Civ. Code § 670; and <u>In re Mission Bay Jet Sports, LLC</u> in their objection to requests (1) and (2). Nevertheless, neither Cal. Const., Art. X, § 3[1] nor Cal. Civ. Code § 670[2] call the above judicially noticed facts into question. Similarly, <u>In re Mission Bay Jet Sports, LLC</u> merely establishes Mission Bay as meeting the definition of "navigable waters" for purposes of admiralty jurisdiction. 570 F.3d 1125, 1127 (9th Cir. 2009). <u>In re Mission Bay Jet Sports, LLC</u> does not touch upon who owns, controls, governs, or maintains Mission Bay.

  The United States requested judicial notice of four other documents. (<u>See generally</u> Doc. No. 5-3, 4, 6, 7, Ex. C, D, F, G.) Because the Court does not rely on these documents in reaching its conclusion below, the Court denies as moot these remaining requests.

    ii. <u>Plaintiffs' Suits in Admiralty Act ("SAA") Negligence Claim</u>

  The SAA permits actions against the United States in cases "in which, if a vessel were privately owned or operated . . . or if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903(a). The SAA "does not itself provide a cause of action. It merely operates to waive the sovereign immunity of the United States in admiralty suits." <u>Dearborn v. Mar Ship Operations, Inc.</u>, 113 F.3d 995,

---

[1] Cal. Const., Art. X, § 3 states that "[a]ll tidelands within two miles of any incorporated city, city and county, or town in this State, and fronting on the water of any harbor, estuary, bay, or inlet used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations…" It does not undermine the fact that Mission Bay was granted to the City of San Diego, which is not a private person, partnership, or corporation, or that the City governs the recreational use of Mission Bay.

[2] Cal. Civ. Code § 670 states that "[t]he State is the owner of all land below tide water, and below ordinary high-water mark, bordering upon tide water within the State; of all land below the water of a navigable lake or stream; of all property lawfully appropriated by it to its own use; of all property dedicated to the State; and of all property of which there is no other owner." It does not undermine the fact that Mission Bay was granted to the City of San Diego or that the City governs the recreational use of Mission Bay.

996 n.1 (9th Cir. 1997).  As such, Plaintiffs must establish a cognizable admiralty claim against the United States.

Negligence is an actionable wrong under general maritime law.  See Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 5:4 (6th ed. Nov. 2020); Leathers v. Blessing, 105 U.S. 626, 629 (1881) (recognizing negligence under general maritime law).  To establish negligence under admiralty law, a plaintiff must prove the same elements as a common law negligence claim by a preponderance of the evidence.  Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001).  The elements include duty, breach, causation, and damages.  Id.  "In admiralty the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates of reasonableness and prudence."  Thomas J. Schoenbaum, Admiralty and Maritime Law § 5:4 (6th ed. 2023).

Plaintiffs' complaint alleges that the United States' negligent and other wrongful acts and omissions created, exacerbated, or contributed to the conditions that caused the fatal incident of Decedent.  (Doc. No. 1, Compl. ¶ 64.)  In particular, Plaintiffs allege that the United States is responsible for public safety in Mission Bay and breached its duty of care to Decedent by failing to adequately regulate, patrol, and enforce personal watercraft rentals and Mission Bay's waterways.  (Id. ¶¶ 62, 63.)  The United States' motion to dismiss asserts that Plaintiffs' negligence claim does not satisfy Rule 12(b)(6) because the United States does not owe a duty of care to Decedent.  (Doc. No. 6 at 15-23.)  The Court agrees.

Since 1945, Mission Bay has been under the exclusive management and control of the City of San Diego.  1945 Cal Stat 627 (Doc. No. 5-1, Ex. A).  In its efforts to govern the recreational use of Mission Bay, the City of San Diego established Municipal Code, Chapter 6, Article 3.  See San Diego, Cal., Municipal Code § 63.20 et seq. (Beach Areas – Authority and Control) (2025) (Doc. No. 5-2, Ex. B).  The Code specifies that San Diego Harbor Police and certain designated lifeguards are responsible for enforcing ordinances and regulations pertaining to recreational water activities in Mission Bay.  Id. at §§ 63.20.1-2, 63.20.6.  While the United States concedes that it has jurisdiction to enforce federal laws

in Mission Bay, Plaintiffs provide no factual allegations that suggest that the United States has a duty under any law, regulation, or rule to regulate the recreational use of Mission Bay or to enforce San Diego's Municipal Code pertaining to the recreational use of Mission Bay. Id.; (Doc. No. 12 at 6.)

Moreover, the United States is not liable for any recreational use hazards that may or may not exist in Mission Bay due to the United States' lack of control over Mission Bay. In its motion to dismiss, the United States points out that under premise liability, neither the United States nor the Coast Guard has any duty to Decedent because they do not exercise control over Mission Bay. (Id. at 15.) Fundamental to premises liability is occupation, control, and ownership of the premises. See Restatement (Third) of Torts § 49 cmt. b (2012). Here, Mission Bay has been under the exclusive management and control of the City of San Diego since 1945, meaning the United States does not occupy, control, or own Mission Bay in any capacity. See 1945 Cal Stat 627 (Doc. No. 5-1, Ex. A). Lacking control of Mission Bay, the United States cannot be held liable for alleged recreational use hazards in its premises.

Plaintiffs' opposition also argues that the "Undertaking Doctrine" applies and creates a duty on the United States towards the Decedent because the Coast Guard oversees the aids to navigation near De Anza Cove in Mission Bay. (Doc. No. 9 at 18-19.) The Court disagrees. Plaintiffs assert that the "Undertaking Doctrine" establishes liability in cases where "the government undertakes to render services necessary for the protection of others and performs those services negligently." (Doc. No. 9 at 18) (citing Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955).) As the United States points out, undertaking applied in Indian Towing because the Coast Guard operated the lighthouse at issue. See Indian Towing Co., 350 U.S. at 62. Here, the United States does not operate any of the private aids to navigation relevant to the incident or near De Anza Cove. (See Doc. No. 5-5, Ex. E.) As noted in the Coast Guard Light List, the official publication of all federal aids to navigation placed and maintained by the Coast Guard, the five federal aids to navigation for Mission Bay are not located in the interior waters of Mission Bay or near

De Anza Cove. (Id.)  As such, none of Plaintiffs referenced private aids to navigation are operated or maintained by the United States.  Without more, Plaintiffs fail to allege any facts that establish that the United States renders services related to the private aids of navigation for purposes of the Undertaking Doctrine.  Thus, the United States has no duty or liability under this theory.

Based upon the facts alleged in the complaint and the facts contained in the judicially noticeable documents, Plaintiffs have failed to allege any facts or information that allows this Court to draw the reasonable inference that the United States owes the Decedent a duty of care.  Thus, Plaintiffs have failed to adequately plead sufficient facts to satisfy the elements for a theory of negligence, and Plaintiffs' claim must be dismissed.

## Conclusion

For the reasons above, the Court grants the United States' motion to dismiss, and the Court dismisses Plaintiffs' complaint.[3]  The Court grants Plaintiffs leave to amend as to any issue that Plaintiffs contend can be cured by amendment.  Plaintiffs must file its amended complaint within thirty (30) days from the date this order is filed if it can do so.

**IT IS SO ORDERED.**

DATED: January 12, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[3] Because the Court grants the United States' Motion to Dismiss, the Court will not address C.P.'s lack of standing to bring a wrongful death cause of action for S.P.'s death at length.  See Cal. Civ. Proc. § 377.60(c) (2025).