

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ASHLEY PETERSON, et al.,

                    Plaintiffs,

v.

UNITED STATES OF AMERICA and DOES 1-100,

                    Defendants.

Case No.:  25-cv-01916-H-SBC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

[Doc. No. 20.]

On April 14, 2026, Defendant United States of America ("the United States") filed a motion to dismiss Plaintiffs Ashley Peterson, Mark Peterson, II, and C.P.'s First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  (Doc. No. 20.)  On May 18, 2026, Plaintiffs filed a response in opposition to the United States' motion to dismiss.  (Doc. No. 21.)  On May 26, 2026, the United States filed its reply.  (Doc. No. 22.)  On June 1, 2026, the Court took the matter under submission.  (Doc. No. 24.)  For the reasons below, the Court grants the United States' motion to dismiss.

/ / /

/ / /

/ / /

1

**Background**

The following background is taken from the allegations set forth in Plaintiffs' First Amended Complaint ("FAC") and judicially noticed facts.

On July 29, 2023, three individuals rented two privately owned, personal watercrafts for use in Mission Bay in San Diego, California.  (Doc. No. 16, FAC ¶¶ 45-47.)  At approximately 1:52 p.m., one of the personal watercrafts struck and killed S.P. (the "Decedent"), a twelve-year-old child who was on a stand-up paddle board near De Anza Cove in Mission Bay.  (Id. ¶¶ 57-61, 66-68.)  The operator of the personal watercraft that struck S.P. was arrested, charged, and ultimately pled guilty to vehicular manslaughter with gross negligence.  (Doc. No. 5-4, Ex. D.)

On July 28, 2025, Plaintiffs filed a complaint against the United States and Does 1-100.[1]  (Doc. No. 1, Compl.)  On December 2, 2025, the United States filed a motion to dismiss. (Doc. No. 6.)  On January 12, 2026, the Court granted the United States' motion with leave to amend.  (Doc. No. 15.)  On February 11, 2026, Plaintiffs filed an amended complaint. (Doc. No. 16.)  Plaintiff Ashley Peterson is S.P.'s surviving natural mother and the appointed administrator of the estate of S.P.  (Id. ¶¶ 3, 4.)  Plaintiff Mark Peterson, II is S.P.'s surviving natural father, and Plaintiff C.P. is S.P.'s surviving natural brother.  (Id. ¶¶ 5, 6.)  Plaintiffs all reside in the County of San Diego.  (Id. ¶¶ 3-6.)

Plaintiffs claim that the United States, through the United States Army Corps of Engineers ("USACE") and the United States Coast Guard ("USCG"), maintains, operates, controls, monitors, patrols, oversees, regulates, or administers the waters and marinas of Mission Bay, San Diego in conjunction with the City of San Diego and the State of

---

[1] On June 17, 2024, Plaintiffs also filed a personal injury and wrongful death suit in Superior Court of California, County of San Diego, against the City of San Diego, the County of San Diego, the State of California, various employees of those public entities, the operators of the personal watercrafts, the owners and lessors of the personal watercrafts, and the website through which the rental was arranged. See Peterson et al. v. City of San Diego, Case No. 37-2024-00028442-CU-PO-CTL (2024).  The case is ongoing.

2

California.  (Id. ¶¶ 9, 26.)  Plaintiffs assert that Mission Bay is a Regulated Navigation Area ("RNA") pursuant to 33 C.F.R. § 165.1122, and the USCG is one entity responsible for the safety of vessels and others present in Mission Bay.  (Id. ¶¶ 24, 25.)  Plaintiffs allege that the USCG was informed and on notice of the dangerous navigation conditions in Mission Bay, through the federal Boating Accident Reporting Database ("BARD"), the Waterways Analysis and Management Surveys ("WAMS"), and other reports completed by the USCG, and have failed to take sufficient corrective action or to warn mariners.  (Id. ¶¶ 27, 28, 30, 31, 71.)

Plaintiffs further allege that the USCG has not turned over complete control and management of Mission Bay to the City of San Diego and are actively involved in the design, placement, and maintenance of five federal aids to navigation ("ATONs") marking the channel leading into Mission Bay.  (Id. ¶¶ 29, 32, 33, 85.)  Plaintiffs claim that the USCG has mandatory duties under 33 C.F.R § 66 to ensure the safety of navigational waterways through the maintenance of ATONS and San Diego's Private Aids to Navigation ("PATONs") systems.  (Id. ¶¶ 36-43, 82, 83.)  Plaintiffs contend that the USCG approved the City of San Diego's PATON system despite its nonconformity with federal requirements.  (Id. ¶¶ 37-39, 71.)  Plaintiffs assert that the dangerous conditions that led to the incident were created or exacerbated by the lack of ATONs, misplacement of ATONs, or failure to warn about the conditions created.  (Id. ¶¶ 53, 62-54.)

Plaintiffs' amended complaint alleges a claim for negligence and other wrongful conduct under the Suits in Admiralty Act, 46 U.S.C. § 30901 et seq.  (Id. ¶¶ 76-90.)  Plaintiffs allege that the United States negligently executed its navigational safety operations, breaching its duty of care to the Decedent.  (Id. ¶¶ 82-88.)  Plaintiffs contend that the United States' negligent and other wrongful acts and omissions were a legal and factual cause in the Decedent's injuries and death. (Id. ¶¶ 89, 90.)

By the present motion, the United States moves to dismiss Plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (Doc. No. 20.)

/ / /

25-cv-01916-H-SBC

## Discussion

### I.      Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal

25-cv-01916-H-SBC

conclusions" as true.  Iqbal, 556 U.S. at 678.  "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

A court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).   Dismissal without leave to amend is proper if the complaint cannot be saved by amendment.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## II.    Analysis

### A.    Plaintiffs' Suits in Admiralty Act ("SAA") Negligence Claim

The United States does not dispute that the Court has admiralty jurisdiction over Plaintiffs' Suits in Admiralty Act ("SAA") claim.  (Doc. No. 20 at 16-17.)  The SAA permits actions against the United States in cases "in which, if a vessel were privately owned or operated . . . or if a private person or property were involved, a civil action in admiralty could be maintained."  46 U.S.C. § 30903(a).  The SAA "does not itself provide a cause of action.  It merely operates to waive the sovereign immunity of the United States in admiralty suits." Dearborn v. Mar Ship Operations, Inc., 113 F.3d 995, 996 n.1 (9th Cir. 1997).  As such, Plaintiffs must establish a cognizable admiralty claim against the United States.

Negligence is an actionable wrong under general maritime law.   See Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 5:4 (6th ed. Nov. 2020); Leathers v. Blessing, 105 U.S. 626, 629 (1881) (recognizing negligence under general maritime law).  To establish negligence under admiralty law, a plaintiff must prove the same elements as a common law negligence claim by a preponderance of the evidence.  Morris v. Princess

25-cv-01916-H-SBC

Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001). The elements include duty, breach, causation, and damages. Id. "In admiralty the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates of reasonableness and prudence." Thomas J. Schoenbaum, Admiralty and Maritime Law § 5:4 (6th ed. 2023).

Plaintiffs' complaint alleges that the United States' negligent and other wrongful acts and omissions created, exacerbated, or contributed to the dangerous conditions that caused the fatal collision involving the Decedent. (Doc. No. 16, FAC ¶¶ 89, 90.) Plaintiffs contend that "admiralty recognizes a federal duty of care to waterway users that does not depend on land title," citing Sutton v. Earle, 26 F.3d 903 (9th Cir. 1994) and Indian Towing Co. v. United States, 350 U.S. 61 (1955). (Doc. No. 21 at 2, 7.) Plaintiffs advance four theories to establish a duty of care on behalf of the United States. (Id. at 7-12.) The United States' motion to dismiss asserts that Plaintiffs' negligence claim does not satisfy Rule 12(b)(6) because the United States does not owe a duty of care to the Decedent. (Doc. No. 20 at 14-16.) The Court agrees with the United States and will address each of Plaintiffs' theories in turn.

### 1.    Sutton v. Earles Does Not Impose a Duty of Care

Plaintiffs assert that Sutton v. Earles imposes the same duty of care on the United States as on a private party whose property abuts navigable waters. (Id. at 7.) Plaintiffs allege that the USCG's acts of (1) placing federal ATONs marking the channel into Mission Bay, (2) approving PATONs in the interior of the Bay, and (3) receiving notice of recurrent personal watercraft misuse within the Bay created a duty of care to the Decedent. (Id. at 8.) The United States agrees with the holding of Sutton—that there is a duty to warn of dangers from government-placed obstructions—but disagrees with Plaintiff's application of Sutton to the facts here. (Doc. No. 22 at 2-3.)

In Sutton, the Navy placed an unlit mooring buoy within the waters of the United States Naval Weapons Station in Huntington Harbor, an area understood to be used by recreational boaters. 26 F.3d at 906. The underlying cause of action arose when a pleasure

25-cv-01916-H-SBC

boat collided with the Navy's unlit buoy, killing several passengers. Id. The Ninth Circuit found the government negligent for failing to illuminate the buoy and inadequately posting speed limits. Id. at 914. The Ninth Circuit held that its decision "imposes no *general* duty to ensure the safety of navigable waters," only that the government "must take reasonable precautions to warn of dangers it creates by placing obstructions within the navigable waters of its Weapons Station." Id. at 912. In other words, the government possessed a concomitant duty to warn boaters of the danger presented by the mooring buoy when it placed the buoy in question. Id. at 912

Here, the Court agrees with the United States that the facts are distinguishable. First, unlike the buoy in Sutton, the personal watercraft that collided with the Decedent was not placed by or the property of the United States. (Doc. No. 16, FAC ¶¶ 46, 58.) The USCG is also not responsible for the placement of any ATONs, PATONs, or other obstructions near De Anza Cove, where the Decedent was struck. (See Doc. No. 5-5, Ex. E.) As noted in the Coast Guard Light List, the official publication of all federal ATONs placed and maintained by the Coast Guard, the five federal ATONs for Mission Bay are not located in the interior waters of the Bay including De Anza Cove, one of the innermost parts of the Bay. (Id.) To the extent that Sutton imposes a duty to warn of dangers from government-placed obstructions, the USCG only has a duty to warn of dangers presented by the five federal ATONs in the exterior waters of Mission Bay. Further, any PATONs within Mission Bay are not operated, maintained, or cared for by the United States in any capacity. 33 C.F.R. § 62.1; see also 33 C.F.R. § 66.01-1(b) ("private aids to navigation includes all marine aids to navigation operated in the navigable waters of the United States other than those operated by the Federal Government"). While the United States acknowledges the USCG's role in the approval process for PATONs, the United States has no duties or responsibilities from this role other than those enumerated in 33 C.F.R. § 66. (Doc. No. 22 at 7.) Without more, Plaintiffs fail to allege any facts that establish that the United States placed any ATONs, PATONs, or other obstructions within Mission Bay and De

25-cv-01916-H-SBC

Anza Cove such that the United States possesses a concomitant duty to the Decedent under Sutton.

Even accepting as true Plaintiffs' allegation that "the City of San Diego's PATON application and implementation of the PATON system did not conf[o]rm to the [U.S. Aids to Navigation System] requirements," (Doc. No. 16, FAC ¶ 39), Plaintiffs fail to establish a private cause of action or remedy regarding the USCG's PATON permitting authority. Plaintiffs do not cite to any federal statute in their amended complaint that provides a private cause of action for the United States' purported violation, (see generally, id.), and the SAA itself does not authorize a private cause of action for negligently reviewing or approving PATON applications. See 46 U.S.C. § 30903(a). The SAA permits actions against the United States in cases "in which, if a vessel were privately owned or operated . . . or if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903(a). Here, private parties do not possess the authority to review or approve PATON applications. See 33 C.F.R. § 66.01-15. As such, a waiver of sovereign immunity would not apply, and Plaintiffs lack a cognizable claim under this theory.

Lastly, Plaintiffs argue that the USCG was on notice of recurrent personal watercraft misuse within the Bay, through the federal Boating Accident Report Database ("BARD") and Waterways Analysis and Management Surveys ("WAMS"), and thus possessed a duty of care to the Decedent. (Doc. No. 16, FAC ¶¶ 27, 30, 41.) The United States admits that the USCG publishes boater incident data pursuant to Title 46 of the United States Code. (Doc. No. 20 at 8); see 46 U.S.C § 6102. However, the United States contests Plaintiffs' suggestion that the BARD creates a federal duty or federal liability for the deaths, injuries, and property damage reported. (Id.) The Court agrees. According to 46 U.S.C § 6102, the purpose of the BARD is to "collect, analyze, and publish reports, information, and statistics on marine casualties together with findings and recommendations the Secretary considers appropriate." 46 U.S.C § 6102(b). The statute does not assert or suggest that the BARD creates a federal duty to prevent or federal liability for boating accidents generally.

25-cv-01916-H-SBC

See id.  Similarly, while the USCG conducts WAMS of Mission Bay, the United States notes that the referenced survey focuses on ATONs, none of which are in the interior of Mission Bay, and was conducted in 2024, a year after the incident.  (Doc. No. 20 at 5; Doc. No. 17-2, Ex. B at 15.)  Given that the WAMS at issue was conducted a year after the incident occurred and the scope was limited to federal ATONs, it is unclear how the USCG would have been on notice of the recurrent personal watercraft misuse Plaintiffs refer to.

Thus, the Court finds the United States does not have a duty of care to the Decedent under Sutton.

### 2.    Indian Towing v. United States Does Not Impose a Duty of Care

Plaintiffs allege that Indian Towing v. United States imposes a duty of care under the "negligent-undertaking doctrine." (Doc. No. 21 at 9.)  Plaintiffs claim that the USCG "actively undertook to mark a navigational channel leading into Mission Bay" and "failed to maintain the safety of this channel after notice of hazards." (Id. at 10; Doc. No. 16, FAC ¶ 41.)  Plaintiffs further assert that the USCG "conducted or initiated a WAMS survey of Mission Bay and failed to identify or correct navigational hazards." (Id. ¶ 30; Doc. No. 21 at 10.)  The United States rebuts this theory by distinguishing Indian Towing from the present facts and asserting that the USCG took no actions to trigger the Undertaking Doctrine. (Doc. No. 22 at 5.)  The Court agrees.

As addressed in the Court's prior order, the Undertaking Doctrine applied in Indian Towing because the USCG was directly responsible for the operation, maintenance, and upkeep of the lighthouse at issue.  See Indian Towing Co., 350 U.S. at 62.  The Supreme Court found that the USCG "need not undertake the lighthouse service. But once it exercised its discretion to operate [the lighthouse] … it was obligated to use due care to make certain the light was kept in good working order." Id. at 69.  Here, the United States does not operate, maintain, or control any of the ATONs or PATONs near De Anza Cove, where the incident occurred. (See Doc. No. 5-5, Ex. E; see also discussion supra Part II.C.1.)  It is unclear how the ATONs that Plaintiffs acknowledge "mark the channel leading into Mission Bay" create a duty under any law, regulation, or rule for the USCG

9

25-cv-01916-H-SBC

to regulate the recreational use of Mission Bay and, more specifically, De Anza Cove. (See Doc. No. 21 at 10.) While Plaintiffs assert that the amended complaint alleges new facts, none of the facts suggest that the USCG's undertaking of ATONs leading into the Bay creates a duty of care to mark, monitor, and maintain navigational safety of the Bay itself.

Plaintiffs next allege that the Undertaking Doctrine applies because the USCG conducted a WAMS of Mission Bay and failed to identify or correct known navigational hazards present where the incident occurred. (Doc. No. 16, FAC ¶ 30; Doc. No. 21 at 10.) While the United States concedes that a WAMS was conducted, the survey was conducted in 2024, a year after the incident, and focused on federal ATONs. (Doc. No. 20 at 5; Doc. No. 17-2, Ex. B at 15.) Given that the WAMS was conducted after the incident occurred and the scope was limited to federal ATONs, it is unclear how the USCG would have been on notice of, identified, or corrected the alleged navigational hazards Plaintiffs allude to.

Plaintiffs fail to allege any facts that establish that the United States renders services related to ATONs, PATONs, or WAMs for purposes of the Undertaking Doctrine. As such, the Court cannot conclude that the United States has a duty to Decedent under this theory.

### 3.    The Federal Regulatory Scheme Does Not Impose a Duty of Care

Plaintiffs contend that the federal regulatory scheme imposes duties independent of land ownership. (Doc. No. 21 at 10-11.) Plaintiffs rely upon Mission Bay's designation as a Regulated Navigation Area ("RNA"), the USCG's PATON permitting authority, and the USCG's role on the San Diego Harbor Safety Committee to support their contention. (Doc. No. 16, FAC ¶¶ 24, 32, 34.)

With respect to Mission Bay's designation as an RNA, the United States clarifies that RNAs are authorized to "manage commercial and naval vessel traffic, not recreational activity like that at issue in this case." (Doc. No. 22 at 9.) An RNA is a "water area within a defined boundary for which regulations for vessels navigating within the area have been established under this part." 33 C.F.R. § 165.10. The relevant statute designating Mission Bay as an RNA applies only to "all vessels of 100 gross tons (GT) or more." 33 C.F.R. §

165.1122(c).  The vessels involved in the incident here, a stand-up paddle board and two personal watercrafts, do not fall into this category.  As such, it is unclear how Mission Bay's designation as an RNA creates duties for the USCG here.

Turning to Plaintiffs' reliance upon the USCG's PATON permitting authority as a source of duty, the United States has no duties or responsibilities from this role other than those enumerated in 33 C.F.R. § 66.  (Doc. No. 22 at 7.)  As discussed, Plaintiffs fail to establish a private cause of action or remedy regarding the USCG's PATON permitting authority.  (See discussion supra Part II.C.1.)

Plaintiffs last point to the USCG's role on the San Diego Harbor Safety Committee to suggest that the USCG holds "primary authority for enforcement of federal requirements in the navigable waters offshore and … Mission Bay."  (Doc. No. 16, FAC ¶¶ 32, 34; Doc. No. 21 at 11.)  The United States asserts that Plaintiffs fail to acknowledge the context of the quote, namely that the San Diego Harbor Safety Committee and Plan aim to prevent environmental incidents, not recreational incidents.  (Doc. No. 20 at 4; see also Doc. No. 17-2, Ex. B.)  The Court agrees with the United States.  While the Harbor Safety Plan may serve purposes other than environmental protection in practice, the San Diego Harbor Safety Committee was established to address oil spill prevention and response as set out in the California Oil Spill Prevention and Response Act of 1990.  See Cal. Gov't Code § 8670.1; see also 14 Cal. Code Regs. § 800.5.  Moreover, Plaintiffs concede in their objection to the United States' request for judicial notice that the Harbor Safety Plan "concerns navigational management and pollution-prevention objectives relating to San Diego Bay Harbor operations generally," not "the specific federal duties, navigational hazards, regulatory failures, marking obligations, rental conduct, or operational acts and omissions alleged."  (Doc. No. 21-7 at 5.) As such, any duties, roles, and responsibilities assigned to the USCG by the California Oil Spill Prevention and Response Act or the San Diego Harbor Safety Committee arise in the context of environmental preservation and are authorized by California state law, not federal law.

25-cv-01916-H-SBC

Plaintiffs have failed to allege any facts or information that allows this Court to draw the reasonable inference that the United States owes the Decedent a duty of care under the federal regulatory scheme.

### 4.    USACE Operations Do Not Provide a Basis for Liability

Plaintiffs allege that the USACE "took part in the dredging of Mission Bay" and are responsible, in part, for the narrow "mixed-use" throughway where the incident occurred. (Doc. No. 16, FAC ¶ 81.)  Beyond this statement, Plaintiffs do not allege any other facts regarding the USACE or mention the USACE in their amended complaint. (See generally, id.)

As discussed, to establish negligence under admiralty law, a plaintiff must prove the same elements as a common law negligence claim by a preponderance of the evidence. Morris, 236 F.3d at 1070 (9th Cir. 2001).  The elements include duty, breach, causation, and damages. Id.  A claim will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  Here, Plaintiffs do not provide sufficient facts to support a negligence claim against the United States through the purported actions of the USACE.  Plaintiffs do not explain how the USACE owes a duty to Decedent from its dredging operations, nor do Plaintiffs allege that the USACE breached any duties through the creation of a narrow "mixed-use" throughway in Mission Bay.  Accepting Plaintiffs' assertion as true, it is still unclear what misconduct Plaintiffs are alleging or what theory of liability applies to the USACE.  Accordingly, dismissal for failure to state a claim is proper. See Mendiondo, 521 F.3d at 1104; see also Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d at 800.

Based upon the facts alleged in the complaint and the facts contained in the judicially noticeable documents, Plaintiffs have failed to allege any facts or information that allows this Court to draw the reasonable inference that the United States owes the Decedent a duty

of care. Thus, Plaintiffs have failed to adequately plead sufficient facts to satisfy the elements for a theory of negligence, and Plaintiffs' claim must be dismissed.

### B.      Request for Judicial Notice

The United States filed a request for judicial notice of certain documents and facts. (Doc. No. 17.)  Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).  Proper subjects of judicial notice may include information on government websites, legislative documents, matters of public record, and publicly accessible websites.  See Fed. R. Evid. 201; see also, Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities.").

In deciding a motion to dismiss under Rule 12(b)(6), a court is generally limited to the four corners of the complaint.  Ritchie, 342 F.3d at 908.  However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice."  Id.; see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'").

The United States requests the Court take judicial notice of three documents containing information derived from official government agency websites and matters of public record. (Doc. No. 17.)  On May 18, 2026, Plaintiffs filed an objection to the United States' request as to all exhibits.  (Doc. No. 21-7.)  Plaintiffs do not generally oppose judicial notice of the existence of public records, statutes, regulations, and administrative documents. (Id. at 3, 6.)  Rather, Plaintiffs object to the United States' attempts to use the noticed materials to establish "disputed factual assertions, interpretations, or conclusions"

25-cv-01916-H-SBC

contained therein.  (Id. at 6.)  On May 26, 2026, the United States filed its reply.  (Doc. No. 23.)

The United States' request for judicial notice is granted as to the San Diego Harbor Safety Plan for 2024.  (Doc. No. 17-2, Ex. B.)  In particular, the Court takes notice of the following information: "The Coast Guard initiated a WAMS review in 2024 of Mission Bay and San Clemente Island which will be published this year [2024]."  (Id. at 27.)  The document is publicly available, derived from an official government agency website, and incorporated by reference in the amended complaint.  (See Doc. No. 16, FAC ¶ 32, 34.)

The Court notes that Plaintiffs object to the admission of the San Diego Harbor Safety Plan on the grounds that it is irrelevant and "does not concern the allegations at issue in this case, including the specific federal duties, navigational hazards, regulatory failures, marking obligations, rental conduct, or operational acts and omissions alleged by Plaintiffs regarding the subject incident in Mission Bay."  (Doc. No. 21-7 at 5.)  However, the Court is hard-pressed to find the San Diego Harbor Safety Plan irrelevant when the Plaintiffs own amended complaint refers to the document and relies upon it for the basis of their allegation.  (See Doc. No. 16, FAC ¶¶ 32, 34); see also Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002) (finding a document may be incorporated by reference into a complaint if plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim).  Notably, Plaintiffs do not object to the accuracy of the document or the contents therein.  (See generally Doc. No. 21-7.)

The United States requested judicial notice of two other documents.  (See Doc. No. 17-1, Ex. A; Doc. No. 17-3, Ex. C.)  Because the Court does not rely on these documents in reaching its conclusion below, the Court denies as moot these remaining requests.

### C.    Plaintiff's Request for Fed. R. Civ. P. 12(d) Conversion

Plaintiffs request the Court treat the United States' motion as one for summary judgment because the motion relies upon "extra-pleading declarations and manuals."  (Doc. No. 21 at 5.)  If a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the court generally must convert the motion into a Rule

56 motion for summary judgment.  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003); Fed. R. Civ. P. 12(d).  A court may, however, consider certain material such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  See Coto Settlement, 593 F.3d at 1038; Ritchie, 342 F.3d at 908; Van Buskirk v. CNN, 284 F.3d 977, 980 (9th Cir. 2002).  "Whether to convert a Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 12(d) is at the discretion of the district court."  Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 968 (N.D. Cal. 2015) (citing Burgess v. City and Cnty of San Francisco, 955 F.2d 47, 47 (9th Cir. 1992)).

The Court exercises its discretion and declines to convert the Motion.  The matters outside the pleadings on which the parties rely are all documents incorporated by reference in the complaint or matters of judicial notice.

### Conclusion

For the reasons above, the Court grants the United States' motion to dismiss.  The Court dismisses Plaintiffs' amended complaint.[2]   The Court grants Plaintiffs leave to amend as to any issue that Plaintiffs contend can be cured by amendment consistent with this order.  Plaintiffs must file its amended complaint within thirty (30) days from the date this order is filed.

**IT IS SO ORDERED.**

DATED: June 5, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[2] Because the Court grants the United States' Motion to Dismiss, the Court will not address C.P.'s lack of standing to bring a wrongful death cause of action for S.P.'s death at length.  See Cal. Civ. Proc. § 377.60(c) (2025).

25-cv-01916-H-SBC